BEFORE THE NINTH CIRCUIT COURT OF APPEALS

UNITED STATES OF AMERICA,

                    Plaintiff,

         vs.                CASE NO. 12-PO-0001

DAVID DUANE EVERIST,        MEDFORD, OREGON
                              AUGUST 22, 2012
                    Defendant.
_____/

TRANSCRIPT OF PROCEEDINGS - MOTION TO DISMISS

BEFORE THE HONORABLE JUDGE MARK D. CLARKE

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

FOR THE PLAINTIFF:          DOUGLAS W. FONG
                             Assistant U.S. Attorney
                             310 West 6th Street
                             Medford, Oregon 97501
                             (541) 776-3564

FOR THE DEFENDANT:          BRIAN C. BUTLER
                             Federal Public Defender
                             15 Newtown
                             Medford, Oregon 97501
                             (541) 776-3630

COURT REPORTER:            MELANIE J. SAVORD, RPR
                             CSR. NO. 96-0325

```
                        INDEX                      ii
```

PROCEEDINGS                                      PAGE

MOTION TO DISMISS                                 3

```
 1      MEDFORD, OREGON - WEDNESDAY, AUGUST 22, 2012 - 10:03 A.M.

 2     ///

 3              THE COURT:  Good morning to everyone.  Good

 4     morning, Mr. Everist.

 5              THE DEFENDANT:  Good morning.

 6              THE COURT:  I have read all the papers you

 7     submitted, including the Government's supplemental

 8     authority.  I think it -- that was just filed here

 9     recently.  But I certainly welcome any comments or

10     arguments you want to make, Mr. Butler.

11              MR. BUTLER:  Thank you, Judge.  I appreciate you

12     having read those things carefully, and I won't -- I will

13     try to not go on too long and just kind of summarize what

14     we have already said.

15              I did see the Government's supplemental response

16     yesterday.  Certainly we are aware of that case;

17     Mr. Everist was the Defendant in that case.  The basis for

18     one of the motions to continue that case came down, and we

19     needed to make sure we crafted our argument accordingly.

20     I read that case again this morning.  It's not real clear

21     what argument Mr. Backlund and Mr. Everist made in that

22     case.  The Court of Appeals just said -- well, they say

23     the CFRs don't apply and, further, that it was vague on

24     due process grounds.  And then they do go through several

25     pages of describing the statutory background.
```

1          I think we have raised argument not raised in

2     that case.  There's a mention that either Mr. Backlund or

3     Mr. Everist may have argued that any residency on a mining

4     claim is always incident to mining.  That is not an

5     argument that we have made in this case so -- but we

6     accept that certainly in the Ninth Circuit case they did

7     assume that these laws apply to miners.  I think we have

8     raised new issues in this case.

9          Just as a way of background -- I know we have

10    already raised this.  Sort of the starting point in this

11    case is the mining law of 1872 which recognizes property

12    rights in valid mining claims whether they are patented or

13    unpatented mining claims.  And the policy behind that Act

14    was to encourage exploration of the West, to encourage

15    people to go and seek minerals.  And I don't think there's

16    any dispute between us about whether those rights were

17    created.  In the Government's memorandum Mr. Fong notes

18    that there's language in there about United States

19    regulations prescribed by law.  And let me be clear:  We

20    are not saying that no regulation could ever be made to

21    regulate mining activities.  We are saying rather that

22    these specific regulations don't apply.  So whether or not

23    any regulations could happen is not a matter of dispute

24    before the Court at this point.

25         The organic Act of 1897 set aside certain public

1    land for public use as forest reserves.  The Act

2    specifically allowed persons to enter the national forest

3    for lawful purposes and those purposes include mining

4    activities.  The Act also says that where mineral lands

5    have been shown to be better adopted for purposes like

6    mining, that land may be restored to the public domain.

7    So the land is better suited for mining it ceases to be

8    part of the national forest land.  Upon location of a

9    mining claim, the land is no longer set aside within the

10   meaning of the organic act and no longer subject to

11   regulations.  And Forest Service regulations certainly

12   cannot change a statute; they have to be properly

13   promulgated under authority by Congress.

14           The other important statute here is the Federal

15   Land Policy Management Act, sometimes known as FLPMA, of

16   1976.  That law recognized that no provision of that Act

17   shall in any way amend the mining law of 1872 or impair

18   the right of any locators or claims under the Act with

19   some limited exceptions.  One of the those exceptions

20   authorized the Secretary of the Interior to determine

21   whether mining operations resulted in unnecessary or undue

22   degradation of public land.  This case is by the Forest

23   Service under the Department of Agriculture, not the

24   Department of Interior.

25           THE COURT:  The Government also refers to an act

1    of 1955 in their papers.

2           MR. BUTLER:  Yes.  I will take a minute to

3    respond to their argument.

4           THE COURT:  Okay.

5           MR. BUTLER:  Our first argument is that the

6    federal regulations regarding public land don't apply to

7    Mr. Everist's valid mining claim.  The mining laws in

8    FLPMA only apply to public lands that are subject to sale

9    or other disposal under general laws, excluding those to

10   which any claims or rights to others have been attached.

11   That language is from Humboldt County versus United States

12   which I have cited in the material.

13          A valid mining claim, as I have said, is a

14   vested private property right in the locator; in this

15   case, Mr. Everist.  Once that claim -- unless the claim is

16   deemed invalid, the land is no longer subject to sale or

17   disposal by the Forest Service so a valid mining claim is

18   no longer a public land within the meaning of FLPMA.  And

19   FLPMA by its own terms does not apply to any property

20   interest recognized by the mining laws.  So if there's

21   a -- if there's a valid mining claim there's no valid

22   federal jurisdiction under FLPMA.

23          Again, it doesn't matter that the Mining Act of

24   1872 contemplates certain regulations.  What matters is

25   there's a statute that allows the Forest Service to

1    promulgate these regulations.

2         Secondly, even assuming that Mr. Everist is

3    subject to federal regulation limiting his use to mining

4    operations and use reasonably incident thereto, the Forest

5    Service hasn't been given any authority to promulgate

6    regulations to determine what operations are reasonably

7    incident to mining.  FLPMA gives the Department of

8    Agriculture the authority to promulgate regulations under

9    FLPMA.  It does not give them the authority to regulate

10   mining claims it authorizes.  Rather, Department of

11   Interior, not Department of Agriculture, to promulgate

12   regulations under the mining law.  The Forest Service is

13   an agency within the Department of Agriculture; the

14   Department of Interior has other agencies.

15         Our argument is that the Forest Service lacks

16   any statutory authority to come up with regulations to

17   decide what uses are reasonably incident to mining.  The

18   36 CFR 261, which is at issue in this case, is promulgated

19   under the authority of Section 551, 16 USC 551, which

20   enables the Secretary of the Department of Agriculture to

21   promulgate regulations for lands that have been set aside.

22         As I said earlier, these lands have been set

23   aside because Mr. Everist has a valid mining claim.  That

24   creates a property interest and no subsequent act,

25   including the Multiple Use Act mentioned by the Government

1    or FLPMA changes that or gives the Forest Service specific

2    authority over these regulations.

3             Just in trying to address couple of the

4    Government's arguments, the first argument I think by the

5    Government is that since the 1872 Mining Act

6    contemplates -- says that mineral deposits alone are open

7    to exploration and purchase.  That means that Mr. Everist

8    is wrong about asserting a property interest in his claim.

9    I think that's just wrong.  We haven't argued that no

10   regulation could apply but clearly recognizes property

11   rights.  That's just a fact the Government has to deal

12   with.  The question is whether there are valid regulations

13   that limit that property right.

14             Then, I guess, the second argument as I

15   understood it by the Government is that Section 551

16   authorized the regulations.  What I didn't see addressed

17   was that 38 CFR 228.1.  Says that those regulations do not

18   apply to management of mineral resources.  The management

19   of mineral resources is left to the Secretary of Interior,

20   not the Secretary of Agriculture.  The Government says

21   well, Mr. Everist's use did cause a surface disturbance;

22   therefore, they have authority.  But the question is not

23   whether in this case Mr. Everist's use caused a surface

24   disturbance but whether or not they had the authority to

25   promulgate regulations relative to that.  He's not charged

1    with a surface disturbance; he's charged with occupying

2    forest land and other things.  So the question isn't

3    whether or not in this case there's a surface disturbance

4    but whether they had the authority to promulgate the

5    regulations to begin with.

6              THE COURT:  Thank you.  Mr. Fong.

7              MR. FONG:  Thank you, Judge.  Judge, I think

8    that all the answers to Mr. Everist's claims here are

9    contained in the cases that we have cited and including

10   Backlund.  And I think where Mr. Everist is getting

11   confused here is this is -- on the one hand, he does have

12   a property right in his mining claim, whatever that means,

13   and when we use that term it can have different meanings

14   in different context.  We are not contesting his property

15   right in the minerals that are located on his -- on this

16   unpatented mining claim.  We are not contesting.  And I

17   think there's no disagreement about the Department of

18   Interior.

19             I will use BLM because they are the ones that

20   really administer the mining laws.  It's their

21   jurisdiction to regulate those matters regarding mineral

22   rights.  So, for instance, the Forest Service doesn't have

23   any say in, well, who gets an unpatented claim, who has

24   the right to the minerals, how much minerals are they

25   allowed to extract, what someone else's rights might be

1    and so forth.

2          So, for instance, if there was a dispute between

3    Mr. Everist and someone else.  So someone else says my

4    claim supercedes yours, and Mr. Everist says no, it

5    doesn't, the BLM might be the folks to go to for that.

6    But the Forest Service -- they don't care.  All they care

7    about is the surface resources; what are the trees, the

8    shrubs, who's living on the place, what kind of litter and

9    so forth is on there.  So I think that distinction needs

10   to be clear.

11         To Mr. Everist, there's two different functions

12   going on here.  That's what the case law recognizes.  Even

13   the potential restrictions that are cited in the CFR -- I

14   think it's 228.1 -- those what that really was meant to

15   apply to was look, we are not going to effect necessarily

16   who owns the minerals or who has the right to the

17   minerals, but our cases are very clear that the Forest

18   Service does have the right to regulate the surface use of

19   the land that the minerals -- where the minerals may or

20   may not be located.

21         So having said that, we basically walked your

22   Honor through the authority for these particular statutes

23   we have cited, all the cases.  And the reason -- I don't

24   know how I overlooked Backlund in my original memorandum

25   because it was there and had that.  For some reason hadn't

1    cited that.  But really all Backlund does is reaffirm the

2    Ninth Circuit's position that in these circumstances the

3    Forest Service has the right to regulate the surface use.

4              THE COURT:  As I recall, you have a number of

5    cases but seemed like the point you are arguing here you

6    are relying on the Goldfarb --

7              MR. FONG:  Goldfield Mines and Doremus.  All

8    those cases say the same.  Backlund -- and all Backlund

9    does is reaffirm that.  I think it's significant it

10   reaffirms that as applies to Defendant's specific case

11   here.  I think one of the Defendant's primary arguments is

12   that well, now that I have an unpatented mining claim,

13   that somehow withdraws that piece of property from any

14   regulation whatsoever.  And that's not what Backlund and

15   all the progeny of these cases have said.  And they are

16   not saying we don't recognize that the Defendant has a

17   property right here, but they are saying despite that,

18   despite the fact that he has an unpatented claim, you

19   know, we still have the -- it's the Forest Service that

20   still has the right to regulate the surface use of what's

21   going on there.

22             I think the Defendant's other argument is that

23   well, the Forest Service has no right to determine what

24   uses are reasonably incident or not incident to mining,

25   and I think that the cases we have cited here certainly

1    are contrary to that.  Particularly there's a -- I think

2    U.S. versus Russell which is a District Court case where

3    there's a -- I think it's an F subcite that we have cited

4    here.  But that case basically held that if the

5    Defendant's mining operation might cause significant

6    surface disturbance, he must file a Notice of Intent to

7    Operate and required to get a plan of operations going.

8         So this is not a situation where the Defendant

9    has a right to determine well, this particular use is

10   incident to mining so I don't have to get Forest Service

11   approval.  Particularly when you look at United States

12   versus Doremus, in that case the Defendant -- that

13   Defendant at least acknowledged that the Forest Service

14   has a right to regulate his mining claim.  He came up with

15   a Plan of Operations, and he was basically allowed to dig

16   five trenches.  Well, he multiplied that by six and dug 30

17   trenches instead and cut down a whole lot of trees and

18   said well, me cutting down the trees was incident to the

19   mining operation.  And the forest -- the Ninth Circuit

20   said no, that's not the case and that -- basically said

21   that you may potentially have that right, but you will

22   still have to get approval to cut down those trees in the

23   first place.  The mere fact that your Plan of Operation

24   was silent doesn't absolve you whether or not it's

25   incident to your mining operations.

```
1          So this idea that the Forest Service has no
2   authority to determine what operations are incident to
3   mining or not is really contradicted by Doremus and the
4   United States versus Russell that we have cited here.  I
5   could go on and on but everything is basically laid out in
6   our memorandum.
7               THE COURT:  Mr. Butler, do you have anything?
8               MR. BUTLER:  No, your Honor.
9               THE COURT:  All right.  Well, I appreciate your
10  comments.  I'm going to go back and look at these
11  memoranda and the cases one more time, the context of your
12  arguments.  I know we have trial scheduled for Tuesday so
13  our goal is to get out an order by Friday so you will know
14  where we are at.  Thank you, Mr. Everist.  Thank you.
15              (Deposition concluded at 10:20 a.m.)
16
17                        --o0o--
18
19
20
21
22
23
24
25
```

CERTIFICATE


        I, MELANIE J. SAVORD, Certified Shorthand
Reporter for the State of Oregon, do hereby certify that I
was present at and reported in machine shorthand the oral
proceedings had in the above-entitled matter.

        I hereby certify that the foregoing is a true
and correct transcript, to the best of my skill and
ability.

        Dated this 13th day of December, 2008.


                              _____

                              Melanie J. Savord
                              CSR Cert. No. 96-0325